IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs November 7, 2017

## STATE OF TENNESSEE v. DOUGLAS BEAUREGARD

**Appeal from the Criminal Court for Madison County**
**No. 16-451      Roy B. Morgan, Judge**

_____

### No. W2017-00536-CCA-R3-CD

_____

The defendant, Douglas Beauregard, appeals his Madison County Criminal Court jury conviction of vandalism of property valued at more than $500 but less than $1,000, alleging an insufficiency of evidence and error in the sentencing and restitution decisions of the trial court. Because the record does not support either the denial of all forms of alternative sentencing or the amount of restitution ordered in this case, we reverse the imposition of a fully incarcerative sentence, vacate the restitution order, and remand the case to the trial court for a new sentencing hearing.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Reversed; Vacated; Remanded**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and ROBERT L. HOLLOWAY, JR., JJ., joined.

Jeremy B. Epperson, Jackson, Tennessee, for the appellant, Douglas Beauregard.

Herbert H. Slatery III, Attorney General and Reporter; Andrew C. Coulam, Assistant Attorney General; Jerry Woodall, District Attorney General; and Jody S. Pickens, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The Madison County Grand Jury charged the defendant with a single count of vandalism of property valued at more than $500 but less than $1,000.

At the defendant's January 2017 trial, Tammy Keller testified that she and the defendant were in a romantic relationship for 12 years and that they share a son. Following the end of their relationship, Ms. Keller continued to reside at 53 Tinker Hill Drive, but the defendant did not. Ms. Keller began a romantic relationship with the victim, Frank Newberry, and the victim was an occasional overnight guest at Ms. Keller's

Tinker Hill Drive residence. On May 7, 2016, Mr. Newberry spent the night with Ms. Keller at her residence. At approximately 3:00 a.m., the couple heard a noise outside the residence and went to investigate. Mr. Newberry observed that the tires on his Aspen SUV "had been flattened." Ms. Keller noticed that the surveillance camera affixed to the corner of the house "had been tilted." She telephoned the police.

Ms. Keller provided the defendant's name as a suspect based upon her interactions with the defendant during the previous day. Ms. Keller said that she maintained an "open policy" whereby she allowed the defendant to "come at any time" to see their son. After the police left, Ms. Keller and Mr. Newberry went back inside the house. A short time later, Mr. Newberry went back outside, saying that "he felt uneasy." Sometime later, Ms. Keller received a telephone call from Mr. Newberry telling her that the police were bringing him back to her house. Ms. Keller did not see the defendant, and, as far as she was concerned, the defendant had no reason to be hiding behind her house.

Mr. Newberry testified that he dated Ms. Keller for approximately eight and a half months and that he was an occasional overnight visitor at her residence. Before May 7, 2016, Mr. Newberry did not know the defendant, but the two men had exchanged text messages in which the defendant told Mr. Newberry that the defendant and Ms. Keller were going to get back together. On May 7, 2016, Mr. Newberry drove to Ms. Keller's house in his Chrysler Aspen SUV after his shift ended at midnight. Mr. Newberry had just paid $1,200 for a set of four new tires. Mr. Newberry and Ms. Keller went to bed and woke to a loud noise at approximately 3:00 a.m. When they went outside to investigate, Mr. Newberry saw that all four of his tires had been slashed. Ms. Keller telephoned the police.

Mr. Newberry then sent a text message to the defendant telling the defendant "to bring his . . . back up there." The defendant did not respond. After the police left, Mr. Newberry went back inside for a short time before he went back outside to look around. As he walked in the back yard, Mr. Newberry "kept hearing a little rustling over here in the side of the house in some woods." When he turned his flashlight in the direction of the sound, he "saw something reflect off of something in the woods" and then saw a man go "running through the woods out behind the house." Mr. Newberry gave chase. When he got close enough, he recognized the man as the defendant. He then telephoned 9-1-1 "and asked them to get somebody back over there" because he "was chasing the person that cut" his tires. The police eventually stopped the men near Englewood Church.

During cross-examination, Mr. Newberry testified that he paid $900 to replace the tires on his SUV. Mr. Newberry acknowledged that he was armed with a bat

when he first encountered the defendant in the woods behind Ms. Keller's house. Mr. Newberry admitted that he chased the defendant with the bat.

Jackson Police Department Officer Taylor Lawley testified that he responded to Ms. Keller's residence to take a property damage report. He observed that Mr. Newberry's vehicle had four flat tires. Ms. Keller pointed out that the surveillance camera on the corner of the house had been moved so that it no longer captured the driveway. After he left Ms. Keller's residence, Officer Lawley went to Old Hickory Mall, where he parked his patrol car. Shortly thereafter, he "got a call of a subject chasing another subject down North Highland towards the area of Englewood." Believing the call to be related to his earlier call, he drove in that direction hoping to see the two men. Another officer stopped the men near the church, and Officer Lawley was the second officer to arrive.

Officer Lawley asked the defendant why he was out at that hour, and the defendant told Officer Lawley "that he'd just been out for a walk in the Tinker Hill area and then Mr. Newberry all of a sudden started chasing him and telling him to stop." The defendant said that "he didn't know who Mr. Newberry was" and "that he had no idea what was going on." The defendant's last known address was in Bolivar, and either Mr. Newberry or Ms. Keller told Officer Lawley that the defendant "was possibly living in the Smyrna or Murfreesboro area." The only item in the defendant's possession "was a pair of white gardening gloves."

At the conclusion of Officer Lawley's testimony, the State rested. The defendant elected not to testify and chose not to present any proof.

Based upon the evidence presented, the jury convicted the defendant as charged of vandalism of property valued at more than $500 but less than $1,000. The jury assessed a fine of $1,500.

At the February 2017 sentencing hearing, Mr. Newberry testified that the original value of the slashed tires was $1,404, and that he had purchased a cheaper replacement set for $891. Mr. Newberry's insurance company calculated the amount of loss at $700 and cut him a check for $200, which was $700 minus Mr. Newberry's $500 deductible. Mr. Newberry said that he was out a total of $2,095.

The presentence report, which was exhibited to the sentencing hearing, established that the defendant had a number of mostly traffic-related convictions, including four convictions for driving on a suspended license. The defendant also had convictions for domestic violence and vandalism. The report indicated that the defendant

was employed at the time of the offense making more than $16 per hour and that he was living with his sister in Smyrna.

The trial court applied enhancement factor 1, that the defendant had a previous history of criminal conduct, and imposed a sentence of two years' incarceration. The trial court denied all forms of alternative sentencing, finding that the defendant's history of domestic violence and vandalism convictions indicated that "he's not a proper candidate to suspend the sentence." The court ordered the defendant to pay Mr. Newberry $2,095 in restitution, which the court calculated as the cost of the two sets of tires minus the money Mr. Newberry received from his insurance company, and approved the $1,500 fine set by the jury.

The defendant filed a timely but unsuccessful motion for new trial followed by this timely appeal. The defendant challenges the sufficiency of the convicting evidence as well as the sentence imposed and the amount of restitution ordered. We consider each claim in turn.

*I. Sufficiency*

The defendant asserts that because none of the State's witnesses saw him slash Mr. Newberry's tires and because officers did not find any cutting tools in his possession, no rational jury could have convicted him of vandalism. The State asserts that the evidence sufficiently supported the defendant's conviction.

We review the defendant's claim of insufficient evidence mindful that our standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011).

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Id.* Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

-4-

"A person commits the offense of vandalism who knowingly . . . [c]auses damage to or the destruction of any real or personal property of another . . . knowing that the person does not have the owner's effective consent." T.C.A. § 39-14-408(b)(1). "A person violating subdivision (b)(1) or (b)(3) is a principal under § 39-11-401 and shall be punished as for theft under § 39-14-105, after determining value under § 39-11-106." *Id.* § 39-14-408(c)(1).

The evidence adduced at trial established that Ms. Keller and Mr. Newberry were awakened by a noise in the early morning hours of May 7, 2016. When they went outside to investigate, they discovered that the tires on Mr. Newberry's vehicle had been slashed, and the video camera affixed to the corner of Ms. Keller's house had been moved so that it no longer captured the driveway area of the house. Ms. Keller telephoned the police, and Officer Lawley arrived to take the report. After the police left, Mr. Newberry and Ms. Keller went back into the house. Feeling uneasy, Mr. Newberry armed himself with a bat and went back outside to walk around the house. There he observed the defendant hiding in the woods behind Ms. Keller's house. The defendant ran, and Mr. Newberry gave chase. As he chased the defendant, Mr. Newberry telephoned the police, who apprehended the defendant near a church not far from Ms. Keller's house. As the defendant correctly observes, neither Mr. Newberry nor Ms. Keller saw the defendant slash Mr. Newberry's tires, and officers did not find any cutting items on the defendant's person. That being said, it is our view that the circumstantial evidence was sufficient to support the defendant's identity as the perpetrator.

## II. Sentencing

The defendant next challenges the propriety of the sentence imposed by the trial court, arguing that the trial court erred by imposing the maximum sentence within the range and by denying all forms of alternative sentencing. The State contends that the fully-incarcerative, two-year sentence is appropriate.

Our standard of review of the trial court's sentencing determinations in this case is whether the trial court abused its discretion, but we apply a "presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The application of the purposes and principles of sentencing involves a consideration of "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." T.C.A. § 40-35-103(5). Trial courts are "required under the 2005 amendments to 'place on the record, either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order

to ensure fair and consistent sentencing.'" *Bise*, 380 S.W.3d at 706 n.41 (citing T.C.A. § 40-35-210(e)).  Under the holding in *Bise*, "[a] sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709.

As indicated, the trial court enhanced the defendant's sentence based upon the defendant's criminal history.  The presentence report indicates that the defendant does have a number of prior convictions that are primarily traffic related.  Consequently, we cannot say that the trial court abused its discretion by imposing the two-year sentence, the maximum within the range.

Although the record supports the imposition of two-year sentence, it does not support a sentence of full confinement.  The defendant, who had no prior felony convictions, was convicted of vandalism of property valued at more than $500 but less than $1,000.  Code section 40-35-122 provides:

> Notwithstanding any law to the contrary, except as provided in subsection (b), the judge sentencing a defendant who commits a non-violent property offense, as defined in subsection (c), on or after July 1, 2010, shall not be authorized to impose the sentencing alternatives of continuous confinement in a local jail or the department of correction as authorized by § 40-35-104(c)(5), (c)(6), or (c)(8).  However, the judge may sentence the defendant to any of the other sentencing alternatives authorized by § 40-35-104(c), which include, but are not limited to, periodic confinement, work release, community corrections, probation, or judicial diversion.
>
> . . . .
>
> (c) As used in this section, a "non-violent property offense" is:
>
> . . . .
>
> (15) Felony vandalism under § 39-14-408, where the amount of the vandalism is less than one thousand dollars ($1,000)[.]

T.C.A. § 40-35-122(a), (c)(15).  Because Code section 40-35-122 prohibits a sentence of continuous confinement for a conviction of vandalism of property valued at less than

$1,000, and because the record shows that the exceptions provided in Code section 40-35-122(b) are not applicable, the trial court erred by imposing a sentence of full confinement in this case. In consequence, the case must be remanded for a new sentencing hearing at which the trial court may sentence the defendant to "any of the other sentencing alternatives authorized by § 40-35-104(c), which include, but are not limited to, periodic confinement, work release, community corrections, probation, or judicial diversion." *Id.* § T.C.A. § 40-35-122(a).

## III. Restitution

Finally, the defendant argues that the trial court erred by ordering that he pay $2,095 in restitution without determining the precise amount of the victim's loss or considering the defendant's ability to pay. The State contends that the award of restitution was proper, pointing to the trial court's commentary at the hearing on the motion for new trial.

"As a general rule, courts exercising criminal jurisdiction are without inherent power or authority to order payment of restitution except as is derived from legislative enactment." *State v. Alford*, 970 S.W.2d 944, 945 (Tenn. 1998). Code section 40-35-104 provides that the trial court may order the "[p]ayment of restitution to the victim or victims either alone or in addition to any other sentence authorized by" the statute. T.C.A. § 40-35-104(c)(2). When the trial court orders the payment of restitution, it must satisfy the requirements in Code section 40-35-304. *See id.* § 40-35-304(g) ("The procedure for a defendant sentenced to pay restitution pursuant to § 40-35-104(c)(2), or otherwise, shall be the same as is provided in this section with" certain statutory exceptions not applicable here.). Code section 40-35-304 provides:

> (b) Whenever the court believes that restitution may be proper or the victim of the offense or the district attorney general requests, the court shall order the presentence service officer to include in the presentence report documentation regarding the nature and amount of the victim's pecuniary loss.

> (c) The court shall specify at the time of the sentencing hearing the amount and time of payment or other restitution to the victim and may permit payment or performance in installments. The court may not establish a payment or performance schedule extending beyond the statutory maximum term of probation supervision that could have been imposed for the offense.

(d) In determining the amount and method of payment or other restitution, the court shall consider the financial resources and future ability of the defendant to pay or perform.

(e) For the purposes of this section, "pecuniary loss" means:

(1) All special damages, but not general damages, as substantiated by evidence in the record or as agreed to by the defendant; and

(2) Reasonable out-of-pocket expenses incurred by the victim resulting from the filing of charges or cooperating in the investigation and prosecution of the offense; provided, that payment of special prosecutors shall not be considered an out-of-pocket expense.

*Id.* § 40-35-304(c)-(e).

The presentence report in this case does not contain any "documentation regarding the nature and amount of the victim's pecuniary loss." *Id.* § 40-35-304(c). The report contains the preparer's statement that the victim "is claiming $325 X4 for each tire and $65 X4 for each TPMS Sensor. He had insurance but he had a $500 deductible." The preparer also indicated that the victim was told to forward a receipt to the district attorney's office. At the sentencing hearing, the victim produced a "Rental Purchase Agreement" that listed the terms of a rent-to-own contract on four Nexen brand tires at a cost of $351.00 each. The agreement, which is dated April 16, 2016, lists the victim as lessee, but it is not signed. The victim testified that he had fulfilled the terms of the agreement and paid the full $1,404 price of the tires prior to the May 7, 2016 offense, but he provided no documentation to prove that he had done so.

Similarly, the victim failed to provide any documentation to support his claim that he had paid $891 for four tires to replace the ones damaged by the defendant. He also did not provide any proof of the value placed on the tires by his insurance company or the precise amount of payment he received from the insurance company. Instead, the victim testified that "[t]he insurance came out and finally looked at it, appraised my truck, and they said the tires was 700 and something. They cut me a check for 200 and something." Under these circumstances, the trial court's finding that the victim's actual pecuniary loss was $2,095 was not "substantiated by evidence in the record." *Id.* § 40-35-304(e)(1).

Additionally, as the defendant asserts, the trial court failed to consider on the record at the sentencing hearing "the financial resources and future ability of the defendant to pay or perform." *Id.* § 40-35-304(d). Although the trial court stated at the hearing on the motion for new trial that it had considered information contained in the presentence report in terms of the defendant's ability to pay, the record establishes that the information relied on by the trial court, the defendant's previous employment history, is not relevant to the defendant's future ability to pay. This is particularly true given that the trial court sentenced the defendant to a term of full confinement. The defendant's confinement necessarily means the loss of his full time job. Moreover, nothing in the record indicates that the trial court considered the defendant's other debts and obligations, including an outstanding medical bill and court-ordered child support for his other children.

Finally, the trial court failed to address the time for payment of the restitution. Because the trial court failed to make the appropriate considerations when ordering restitution in this case, a remand for a new sentencing hearing to determine the appropriate amount of restitution is necessary.

## *IV. Conclusion*

Because the evidence was sufficient to support the defendant's conviction, we affirm the conviction. Because, however, the record does not support the imposition of a fully incarcerative sentence or the order of restitution, we remand the case for a new sentencing hearing as described above.

_____
JAMES CURWOOD WITT, JR., JUDGE